Scott Edward Cole, Esq. (S.B. #160744)
Hannah R. Salassi, Esq. (S.B. #230117)
**SCOTT COLE & ASSOCIATES, APC**
1970 Broadway, Ninth Floor
Oakland, California 94612
Telephone: (510) 891-9800
Facsimile: (510) 891-7030
Email: scole@scalaw.com
Email: hsalassi@scalaw.com
Web: www.scalaw.com

Attorneys for Representative Plaintiffs
and the Plaintiff Class

SCOTT COLE & ASSOCIATES, APC
ATTORNEY'S AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

ANITA C. RAGANO, TERI MCDONALD, individually, and on behalf of all others similarly situated,

Plaintiffs,

vs.

MICHAELS STORES, INC., and DOES 1 through 100, inclusive,

Defendants.

**Case No. CV-11-3908 CRB**

**<u>CLASS ACTION</u>**

**NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN ORDER:**

**(1) GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT;**
**(2) AWARDING ATTORNEYS' FEES AND COSTS TO CLASS COUNSEL;**
**(3) APPROVING ENHANCEMENT AWARD TO THE CLASS REPRESENTATIVE; AND**
**(4) AWARDING REIMBURSEMENT OF CLAIMS ADMINISTRATION FEES AND COSTS**

**Date: March 21, 2013**
**Time: 10:00 a.m.**
**Dept.: Courtroom 6 - 17th Floor**
**Judge: Honorable Charles Breyer**

SCOTT COLE & ASSOCIATES, APC
ATTORNEY'S AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

## NOTICE OF MOTION

**TO EACH PARTY AND TO EACH ATTORNEY OF RECORD IN THIS ACTION:**

**NOTICE IS HEREBY GIVEN** that on March 21, 2013 at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 6, Seventeenth Floor, of the above-entitled Court, located at 450 Golden Gate Ave., San Francisco, CA 94102, Representative Plaintiffs Anita Ragano and Teri McDonald will, and hereby do, move this Court for an Order:

(1) Granting Final Approval of the Parties' Class Action Settlement;

(2) Awarding Attorneys' Fees and Costs to Class Counsel;

(3) Awarding an Enhancement Award to Class Representatives Anita Ragano and Teri McDonald; and

(4) Awarding Reimbursement of Claims Administration Fees and Costs.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Hannah R. Salassi, Esq. and exhibits attached thereto, other records, pleadings, and papers filed in this action, and upon such other documentary and oral evidence or argument as may be presented to the Court at the hearing of this motion.

Dated: February 15, 2013

**SCOTT COLE & ASSOCIATES, APC**

By: /s/ Hannah R. Salassi
Jessica L. Campbell, Esq.
Attorneys for Representative Plaintiffs
and the Plaintiff Class

SCOTT COLE & ASSOCIATES, APC
ATTORNEY'S AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

**TABLE OF CONTENTS**

I. INTRODUCTION ........ 1

II. PROCEDURAL HISTORY AND SETTLEMENT NEGOTIATIONS ........ 2

III. SUMMARY OF SETTLEMENT TERMS ........ 3

IV. THE SETTLEMENT MERITS FINAL APPROVAL ........ 5

A. THE SETTLEMENT IS PRESUMED TO BE FAIR ........ 5

B. ALL OF THE RELEVANT CRITERIA SUPPORT FINAL APPROVAL OF THE SETTLEMENT ........ 6

1. The Relative Strength of the Plaintiffs' Case Favors Final Approval ........ 6

2. The Risk, Expense, Complexity and Likely Duration of Continued Litigation Favor Final Approval ........ 6

3. The Amount Offered in Settlement Favors Final Approval ........ 7

4. The Extent of Discovery Completed and the Stage of the Proceedings Support the Settlement ........ 8

5. The Experience and Views of Class Counsel Favor Final Approval ........ 8

6. The Class Members' Reaction Favors Final Approval ........ 9

V. PLAINTIFF'S COUNSEL'S REQUESTED AWARD OF ATTORNEYS' FEES IS FAIR AND REASONABLE ........ 12

A. The Results Achieved ........ 13

B. The Risk of Litigation ........ 13

C. The Skill Required and the Quality of Work ........ 14

D. The Contingent Nature of the Fee and the Financial Burden Borne by Plaintiff ........ 14

E. Awards Made in Similar Cases ........ 15

F. The Fee Request Also Comports With Other Courts' Awards Under The Lodestar Approach ........ 15

VI. SCA'S COSTS ARE REASONABLE AND WERE INCURRED TO BENEFIT THE CLASS ........ 16

VII. THE REPRESENTATIVE PLAINTIFFS ARE ENTITLED TO A SERVICE PAYMENT ..... 16

VIII. THE CLAIMS ADMINISTRATOR DESERVES REIMBURESEMENT FOR FULLY IMPLEMENTING THE NOTICE PROGRAM ..... 18

IX. CONCLUSION ..... 18

SCOTT COLE & ASSOCIATES, APC
ATTORNEY'S AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEY'S AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Mt. Clemens Pottery Co.*,
328 U.S. 680 (1946). .......... 7

*Barcia v. Contain-A-Way, Inc.*,
2009 U.S. Dist. LEXIS 17118 (S.D. Cal. Mar. 6, 2009) .......... 9, 17

*Bellows v. NCO Fin. Sys.*,
2008 U.S. Dist. LEXIS 103525(S.D. Cal. Dec. 2, 2008) .......... 6, 8

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .......... 12

*Boyd v. Bechtel Corp.*,
485 F.Supp. 610 (N.D. Cal., 1979) .......... 9

*Buccellato v. AT&T Operations, Inc.*,
2011 U.S. Dist. LEXIS 85699 (N.D. Cal. June 30, 2011) .......... 15

*City of Riverside v. Rivera*,
477 U.S. 561 (1986) .......... 12

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) .......... 7, 9

*Fischel v. Equitable Life Assurance Soc'y of the U.S.*,
307 F.3d 997 (9th Cir. 2002) .......... 13

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .......... 5, 15

*In re GNC Shareholder Litig.*,
668 F.Supp. 450 (W.D. Pa. 1987) .......... 16

In re Heritage Bond Litigation,
2005 WL 1594403 (C.D. Cal. June 10, 2005) .......... 13

*In re Mego Financial Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) .......... 15

In re Omnivision Technologies, Inc.,
WL 4293467 (N.D. Cal. Dec. 6, 2007) .......... 12

*In re Quantum Health Resources, Inc. Sec. Litig.*,
962 F. Supp. 1254 (C.D. Cal. 1997) .......... 14

*In re United Energy Corp. Sec. Litig.*,
Case No. MDL No. 726, 1989 WL 73211 (C.D. Cal. Mar. 9, 1989) .......... 16

Knight v. Red Door Salons, Inc.,
2009 WL 248367 (N.D. Cal., Feb. 2, 2009) .......... 15

*Lindow v. United States*,
738 F.2d 1057 (9th Cir.1984) .......... 7

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) .......... 5

*McPhail v. First Command Fin. Planning, Inc.*,
2009 U.S. Dist. LEXIS 26544 (S.D. Cal. Mar. 30, 2009) .......... 12

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*,
688 F.2d 615 (9th Cir. 1992) .......... 5

*Otero v. Rent-A-Center, Inc.*,
(L.A. Super. Ct. 2000) No. BC217038 .......... 16
*Rutti v. LojacCorp, Inc.*,
596 F.3d 1046 (2010) .......... 7
*See Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) .......... 5, 9
*Smith v. Tower Loan of Miss., Inc.*,
216 F.R.D. 338 (S.D. Miss. 2003) .......... 17
*Staton v. Boeing Company*,
327 F.3d 938 (9th Cir. 2003) .......... 5, 7, 12
*Vasquez v. Coast Valley Roofing, Inc.*,
266 F.R.D. 482 (E.D. Cal. 2010) .......... 15
*Weeks v. Kellogg Co.*,
2011 U.S. Dist. LEXIS 155472 (C.D. Cal. Nov. 23, 2011) .......... 6, 8
*Wershba v. Apple Computer, Inc.*,
91 Cal. App.4th 244 (2001) .......... 16
*Wren v. RGIS Inventory Specialists*,
C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) .......... 10, 11

**Federal Statutes**

Fed. R. Civ. P. 23 .......... 5

**Business & Professions Code**

*Manual for Complex Litigation* ("*Manual*")
(4th ed. 2008) § 21.61 at 308 .......... 5

**Treatises & Secondary Resources**

1 Alba Conte, *Attorney Fee Awards*
(3d ed. 2004) § 1.09 .......... 14, 16

SCOTT COLE & ASSOCIATES, APC
ATTORNEY'S AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEY'S AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The proposed Settlement Agreement,[1] preliminarily approved on October 26, 2012,[2] is a fair compromise for the conditionally-certified class of Michaels Stores, Inc.'s ("Defendant" and/or "Michaels") non-exempt employees who were subject to security inspections. With twelve months of litigation prior to settlement negotiations, the parties had a full opportunity to evaluate the value of the claims at issue. The result, reached at mediation, is a Settlement Fund of $2,000,000 to settle the claims, entitling thousands of class members to recovery. Plaintiffs' counsel, Scott Cole & Associates, APC ("SCA" or "Class Counsel") believes that this Settlement better serves the class than further litigation, with its attendant risks.

In addition to distributions to the class members, Plaintiffs also request the Court approve the other payments provided under the settlement. Specifically, in exchange for its efforts in developing the actionable theories, prosecuting this case and investing the resources necessary to reach settlement, Class Counsel requests 25% of the Gross Settlement Value in attorneys' fees and actual litigation costs. Plaintiffs also seek an enhancement award, not to exceed $2,500 for Teri McDonald and $5,000 for Anita Ragano, payment to the California Labor & Workforce Development Agency ("LWDA") for release of claims under the Private Attorneys General Act ("PAGA") under Labor Code §§ 2699 *et seq*, and settlement administration costs. All of these requests have been communicated to the Class Members, who have responded favorably.

As the final step in the settlement process, Plaintiffs request that this Court enter an Order granting final approval of the parties' class action settlement, awarding attorneys' fees and costs to Class Counsel, awarding reimbursement of claims administration costs and approving the Enhancement Awards to the Representative Plaintiffs.

---

[1] A true and correct copy of the fully executed Settlement Agreement, entitled "Michaels Stores, Inc. "Wage and Hour" Class Action Settlement Agreement and Release of Claims," ("Settlement") is attached as Exhibit "A" to the Declaration of Hannah R. Salassi, Esq. in Support of Plaintiffs' Motion for Final Approval ("Salassi Decl."), filed concurrently herewith. Unless otherwise noted, all exhibits referenced herein are attached to the Salassi Decl.

[2] Exhibit "B" Order Granting Preliminary Approval of the Class Action Settlement.

SCOTT COLE & ASSOCIATES, APC
ATTORNEY'S AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

## II. PROCEDURAL HISTORY AND SETTLEMENT NEGOTIATIONS

On July 5, 2011 Plaintiff Anita Ragano filed a lawsuit against Michaels in Superior Court, County of San Mateo, on behalf of herself and all other similarly situated non-exempt employees working for Defendant in California since July 5, 2007.[3] Plaintiff Teri McDonald was subsequently added on September 1, 2011.[4] This matter was removed to the United States District Court, Northern District of California on August 9, 2011.[5] Defendant filed its Answer on December 23, 2011.[6]

In the Complaint, Plaintiffs alleged that Defendant subjected class members to daily unlawful off-the-clock "bag checks," a class-wide employment policy that deprives class members of wages and interferes with their meal and rest breaks.[7] As a result of this practice, Plaintiffs allege Defendant failed to provide uninterrupted meal and rest periods, failed to pay all wages due, failed to provide accurate itemized wage statements, failed to pay wages on termination and engaged in unfair competition.[8]

The parties completed both formal and informal discovery prior to reaching a settlement. Plaintiffs and Defendant exchanged documents, including the handbooks for the Class Members and their supervisors, and Michaels' store-level operating procedures.[9] All of these documents confirmed Michaels' bag check policy. The documents also confirmed that Michaels changed the bag check policy on September 19, 2011, so that employees receive compensation if the time spent is more than what Defendant deems *de minimis*.[10] Plaintiff conducted site inspections of Michael's stores, and Defendant took Ms. Ragano's deposition.[11] In addition, Plaintiffs obtained

---

[3] *See* ECF Docket No. 1.
[4] *See generally* ECF Docket No. 10.
[5] *See generally* ECF Docket No. 1.
[6] *See generally* ECF Docket No. 29.
[7] *See* ECF Docket No. 1.
[8] *See* ECF Docket No. 1.
[9] Salassi Decl. ¶ 8; *See* Exhibit "C, Supplement for Michael Store Associates (California) (Bates Nos. Michaels_Ragano000421-426) ¶ 425; Exhibit "D," Michaels' Standard Operating Procedure Store Security dated August 1, 2010 (Bates Nos. Michaels_Ragano000266-271) ¶¶ 269-270.
[10] Exhibit "E," Standard Operating Procedure Store Security dated September 19, 2011 (Bates Nos. Michaels_Ragano000253-260) ¶¶ 257- 259. Details change in bag check policy.
[11] Salassi Decl. ¶¶ 9, 10.

SCOTT COLE & ASSOCIATES, APC
ATTORNEYS AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

surveys from more than 106 class members regarding bag checks at Defendant's stores.[12] Although the survey was small and informally conducted (class members voluntarily responded to a questionnaire), the information demonstrated that, while Michaels' bag check policy was uniformly enforced, the time spent in such checks was fairly small.[13] Finally, prior to mediation, Defendant provided Plaintiffs with the additional data points needed to complete a damages analysis, including number of class members, average wage and number of workweeks.[14]

The mediation session took place on August 7, 2012, facilitated by David Rotman, Esq., who was selected due to his experience with wage and hour class actions.[15] The pre-mediation discovery and informal data exchange allowed Plaintiffs and Defendant to intelligently weigh the theoretical value of the Class Members claims against the likelihood of class certification and the impact of the *de minimis* defense at the liability phase. The parties were able to reach an understanding at mediation and by October 26, 2012 all named parties and their respective counsel had executed the Settlement and agreed to its terms.[16]

## III. SUMMARY OF SETTLEMENT TERMS

In exchange for a release tailored to the claims raised here, the Settlement requires Defendant to pay up to $2,000,000.00 to participating class members. The Settlement provides for payment of attorneys' fees up to 33 1/3% of the estimated approximate value of the Settlement[17] plus actual litigation costs,[18] an enhancement award to the named Plaintiffs (not to

---

[12] Salassi Decl. ¶ 10.
[13] Exhibit "F," Survey Spreadsheet (personal information redacted).
[14] Salassi Decl. ¶ 12.
[15] Salassi Decl. ¶ 11.
[16] Salassi Decl. ¶ 13.
[17] Exhibit "A," Settlement ¶ 30. Plaintiffs' counsel seeks a fee award of only 25% of the Gross Settlement Amount, plus reimbursement of actual litigation costs. Through the present, SCA has advanced $15,037.73 in unreimbursed litigation costs, and will incur additional expenses through the completion of the settlement approval process. Salassi Decl. ¶ 25. Plaintiffs' counsel submits its billing records and an itemized cost journal with this Motion so as to reflect all work performed and costs incurred in the prosecution of this matter.
[18] Exhibit "A," Settlement ¶ 30.

SCOTT COLE & ASSOCIATES, APC
ATTORNEY'S AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

exceed $2,500 for Teri McDonald and $5,000 for Anita Ragano),[19] and settlement administration costs.

Each member of the Plaintiff Class[20] shall be entitled to receive a pro rata portion of the Net Settlement Fund (his/her "Individual Settlement Share"), calculated based upon the number of weeks worked thereby during the Settlement Period, divided by the total number of workweeks worked by all Plaintiff Class Members during said period.[21] The Settlement Administrator will calculate the number of workweeks worked by Qualified Claimants, the amount to be paid per workweek, and the Individual Settlement Share to be paid to each Qualified Claimant.[22] If the aggregate amount of Settlement Class Members' Individual Settlement Shares equals less than the Floor, than each Qualified Claimant's Individual Settlement Share will be increased on a pro-rata basis until the aggregate amount of Qualified Claimants' Individual Settlement Shares equals/meets the Floor.[23]

In exchange for the consideration outlined above, the Settlement Class will release all claims alleged in the litigation during the relevant time period.[24] The Settlement releases Defendant from liability to the Class Members for claims that were actually alleged in the Complaint, as well as wage and hour class claims which could have been brought based on the specific factual allegations contained in the Complaint.[25] The released claims directly relate to the factual allegations articulated in Plaintiffs' operative Complaint.[26]

---

[19] Exhibit "A," Settlement ¶ 30. The Class Representatives and Class Counsel have agreed to request a $2,500 Enhancement Award for Teri McDonald and a $5,000 Enhancement Award for Anita Ragano at the Final Approval Hearing. The Enhancement Award is intended to recognize the time and effort the Class Representatives expended on behalf of the Class. In this case, the Class Representatives stepped forward and filed suit against Defendant despite fears of damage to their reputation and the potential risk that they would face a substantial cost award if unsuccessful. In addition, Anita Ragano attended a full day deposition prior to the parties' mediation. Class Counsel will provide admissible evidence prior to the Final Approval Hearing to support the requested Enhancement Award.

[20] The Plaintiff Class includes those current and former employees employed at the "Moskatel's" store, which is a Michaels store with a wholesaling component. Exhibit "G," Declaration of Judy Quye.

[21] Exhibit "A," Settlement ¶ 30(c).

[22] *Id.*

[23] *Id.* ¶ 30.

[24] *Id.* ¶¶ 17, 27, 30(c), and 53.

[25] *Id.*

[26] *Id.* ¶ 16.

SCOTT COLE & ASSOCIATES, APC
ATTORNEY'S AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

## IV. THE SETTLEMENT MERITS FINAL APPROVAL

When evaluating a motion for final approval of a class action settlement under Rule 23 of the Federal Rules of Civil Procedure, a court's inquiry focuses upon whether the settlement is "fundamentally fair, adequate, and reasonable." Fed. R. Civ. Proc. 23(e); *Staton v. Boeing Company*, 327 F.3d 938, 959 (9th Cir. 2003) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)); *accord Manual for Complex Litigation* ("*Manual*") (4th ed. 2008) § 21.61 at 308. A settlement is "fair, adequate and reasonable," and therefore merits final approval, when "the interests of the class are better served by the settlement than by further litigation." *Manual* § 21.61 at 462. As the *Hanlon* Court noted, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants, and their strategies, positions and proof." *See Hanlon*, 150 F.3d at 1026. Nevertheless, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties...." *Id.* (citing *Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1992)).

To determine whether a proposed class action settlement is fair, reasonable, and adequate, courts in the Ninth Circuit consider factors such as: the strength of the plaintiff's case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and view of counsel; and the reaction of the class members to the proposed settlement. *See Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004) (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)).

### A. <u>THE SETTLEMENT IS PRESUMED TO BE FAIR</u>

Where "a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation conducted by capable counsel, it is presumptively fair." *Bellows v. NCO*

SCOTT COLE & ASSOCIATES, APC
ATTORNEY'S AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

*Fin. Sys.*, 2008 U.S. Dist. LEXIS 103525, *18 (S.D. Cal. Dec. 2, 2008).The presumption of fairness applies here: the parties conducted meaningful discovery which included production of the relevant policies, Ms. Ragano's testimony and Plaintiffs' survey of the Class Members. Moreover, the only objection involves an issue unrelated to the settlement terms (see IV(B )(6) *infra*) and less than 0.20% of the class opted out.[27] For these reasons and those below, this Court may presume the Settlement is worthy of final approval.

**B. ALL OF THE RELEVANT CRITERIA SUPPORT FINAL APPROVAL OF THE SETTLEMENT**

**1. The Relative Strength of the Plaintiffs' Case Favors Final Approval**

Plaintiffs based their claims, primarily, on the theory that Michaels' bag check policy interfered with Class Member's meal and rest breaks. Plaintiffs' counsel investigated the class claims, conducted formal and informal discovery, and weighed the strength of the evidence against the asserted defenses. Plaintiffs' considerations included, *inter alia*, the questionable certifiability of meal and rest break claims, changes in Michaels' policies regarding compensation for bag checks,[28] and the likely difficulties in proving that the time spent in security inspections was more than *de minimis*. Given that the outcome of any litigation is far from obvious for either Michaels or Plaintiffs, the uncertainty surrounding Plaintiffs' claims supports approval of the Settlement.

**2. The Risk, Expense, Complexity and Likely Duration of Continued Litigation Favor Final Approval**

Analysis of the complexity, expense and likely duration of the litigation often includes a comparison of the amount of the proposed settlement with the present value of the damages the plaintiffs could recover, if successful, appropriately discounted for the risk of not prevailing. *See Bellows*, 2008 U.S. Dist. LEXIS 103525 at *7; *Weeks v. Kellogg Co.*, 2011 U.S. Dist. LEXIS 155472, 47-50 (C.D. Cal. Nov. 23, 2011). Here, Plaintiffs' counsel discounted the theoretical

---

[27] Exhibit "H" Declaration of Katie Horton re: Notice Procedure ("KCC Decl.") ¶ 21. 43 valid requests for exclusion were filed.

[28] Exhibit "E," Standard Operating Procedure Store Security dated September 19, 2011 (Bates Nos. Michaels_Ragano000253-260) ¶ 259. Details change in bag check policy.

SCOTT COLE & ASSOCIATES, APC
ATTORNEY'S AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

maximum recovery to account for inherent risks such as the denial of class certification and the possible success of Defendant's *de minimis* defense at the liability phase. In addition, Plaintiffs' counsel seriously considered that even if it had prevailed on both certification and merits, appeals could extend the litigation process for years, especially given the uncertainty surrounding the applicability of the *de minimis* defense in the context of meal and rest break claims.[29] On that basis, the Settlement is reasonable and warrants the Court's approval. *See Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007). ("Regardless of how this Court might have ruled on the merits of the legal issues, the losing party likely would have appealed, and the parties would have faced the expense and uncertainty of litigating an appeal.").

Moreover, as this Court knows, "the law wisely favors settlement," particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost and rigors of formal litigation. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Staton*, 327 F.3d at 952 ("rejection of a settlement creates not only delay but also a state of uncertainty on all sides, with whatever gains were potentially achieved for the putative class put at risk"). These concerns apply with particular force in a case such as this, where the allegedly unlawful practice similarly affected more than 27,000 employees, most of whose claims involve very small increments of time.

**3. The Amount Offered in Settlement Favors Final Approval**

The $2,000,000 settlement is a guaranteed recovery that provides fair compensation to the Class Members for the bag check claims here. *See West v. Circle K Stores, Inc.*, 2006 U.S. Dist. LEXIS 76558, *15 (E.D. Cal. Oct. 20, 2006).

---

[29] Compensable working time is involved "only when an employee is required to give up a substantial measure of his time and effort," *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 692-693 (1946). In *Lindow v. United States*, 738 F.2d 1062-1063 (1984), the *Lindow* Court held no rigid rule could be applied with mathematical certainty and common sense had to be applied to the facts of each case. The *Lindow* Court focused on three factors: 1) the administrative difficulty of recording small amounts of time for payroll purposes, 2) the size of an aggregate claim of small periods of uncompensated time and 3) the regularity with which employees incurred the uncompensated time. In *Rutti v. LojacCorp, Inc.*, 596 F.3d 1056-1059 (2010), the Court cited the *Lindow* factors and held preliminary activities of one or two minutes *de minimis*, while postliminary activities of five to ten minutes might not be. The *Rutti* Court's decision remanded the case for further consideration of the time increments in question.

SCOTT COLE & ASSOCIATES, APC
ATTORNEY'S AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

Each member of the Plaintiff Class is entitled to receive a pro rata portion of the Net Settlement Fund (his/her "Individual Settlement Share") that is calculated based on the number of workweeks the class member worked during the class period, divided by the number of workweeks all the class members worked during the class period. The Settlement Administrator will calculate the Individual Settlement Share to be paid to each participating class member. If the aggregate amount is less than the floor, the participating class members' shares will be increased to meet the floor. The result is fair compensation. Class members who worked more during the class period receive a larger share, and no matter how many class members participate, they are guaranteed a recovery that, in the aggregate, is no less than the floor.[30]

**4. The Extent of Discovery Completed and the Stage of the Proceedings Support the Settlement**

Courts also consider the extent of discovery completed and the stage of proceedings in determining the fairness, adequacy and reasonableness of a settlement. *See Weeks*, 2011 U.S. Dist. LEXIS 155472, *55-56; *Bellows*, 2008 U.S. Dist. LEXIS 103525 at *8. Here, as discussed in detail, *infra*, Class Counsel thoroughly investigated Michaels' practices and financial condition, conducted formal and informal discovery and surveyed the class members. The parties had a "clear view of the strengths and weaknesses of their cases" at mediation. *Bellows*, 2008 U.S. Dist. LEXIS 103525 at *8 (internal punctuation omitted). The settlement amount and terms were reached based on the parties' informed analysis of the strengths and weaknesses of this case.

**5. The Experience and Views of Class Counsel Favor Final Approval**

Class Counsel possesses extensive knowledge and expertise in the legal issues affecting the class, is very aware of the attendant risks of class action litigation, and is otherwise well-suited to evaluate the Settlement. The endorsement of qualified and well informed counsel of a settlement as fair, adequate and reasonable is entitled to significant weight. *See Bellows*, 2008

[30] Exhibit "A," Settlement ¶¶ 5, 30, and 30(c).

SCOTT COLE & ASSOCIATES, APC
ATTORNEY'S AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

U.S. Dist. LEXIS 103525 at *8 (citing *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 622 (N.D. Cal., 1979). ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.")); *West*, 2006 U.S. Dist. LEXIS 76558 at *17-18 (in class action settlements, the opinions of counsel should be given considerable weight both because of counsel's familiarity with the litigation and previous experience with similar cases). Based on its expertise in this area of the law, Class Counsel supports the Settlement as fair, adequate, reasonable and, most importantly, in the best interests of the class. Given the small increments of time spent by any one employee in the bag check line, recovery absent a class action like this one is highly unlikely.

**6. The Class Members' Reaction Favors Final Approval**

A court may properly infer that a class action settlement is fair, adequate and reasonable when few class members object to it. Indeed, courts may approve class action settlements as fair, adequate and reasonable despite objections from a sizable number of class members. *See, e.g.*, *City of Seattle*, 955 F.2d at 1291-96 (upholding trial court's grant of final approval after receiving over 400 letters from objecting bondholders). The Class Members' response to the preliminarily approved settlement supports its approval. Here, 21.4% of the Class Members[31] returned Claim Forms, claiming 37.9% of the total Settlement Amount,[32] and ***not a single objection was made to the terms of the Settlement itself***. This "provides further support for final approval of the Proposed Settlement....[and] ***raises a strong presumption*** that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telcoms. Coop.*, 221 F.R.D. at 529 (emphasis added); *Barcia v. Contain-A-Way, Inc.*, 2009 U.S. Dist. LEXIS 17118 (S.D. Cal. Mar. 6, 2009) ("The absence of any objector strongly supports the fairness, reasonableness, and adequacy of the settlement."). In fact, "[t]he lack of objections to the settlement is perhaps the most significant factor weighing in favor of settlement." *West*, 2006

[31] Exhibit "H," KCC Decl. ¶¶ 7, 14, and 28. 5,857 Class Members returned timely and non-duplicative claims out of 27,396 total Class Members.

[32] Exhibit "H," KCC Decl. ¶ 28.

SCOTT COLE & ASSOCIATES, APC
ATTORNEY'S AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

U.S. Dist. LEXIS 76558 at *19-20. After full disclosure, the Class Members' lack of objection to the Settlement supports the conclusion that it is fair, adequate and reasonable.

With regard to the "objection" filed by Mr. David Gallo, Esq., the substance of the objection is a recitation of Mr. Gallo's concerns regarding a perceived risk to the class members in his own suit, rather than an objection to the actual terms of settlement. The four objectors – P. Rea, S. Sadlowski, A. Sarabia, and D. Sperline – are all named plaintiffs in an unrelated class action lawsuit against Michaels Stores, titled *P. Rea, et al. v. Michaels Stores, Inc.*, pending in Orange County Superior Court (the "*Rea* Action"). Their objection should not preclude or delay approval of the settlement, because this settlement does not encompass the claims asserted in the *Rea* Action. *See Wren v. RGIS Inventory Specialists*, C-06-05778 JCS, 2011 WL 1230826, at *13 (N.D. Cal. Apr. 1, 2011) (rejecting objection to settlement where objector complained about alleged violations separate from the claims that were at issue in the settlement).

The *Rea* Action is an exemption misclassification case involving store managers, in which the plaintiffs allege they were misclassified as exempt employees and denied overtime pay as a result. The *Rea* plaintiffs are only class members in *Ragano* by virtue of having worked in non-exempt positions prior to becoming store managers. However, the *Rea* Action does not include any allegations on behalf of non-exempt employees. *See Rea* First Amended Complaint, ¶¶ 15-23 (factual allegations pertain only to exempt store managers); ¶ 24 (proposed class definitions include only store managers).[33]

In contrast, the allegations in *Ragano* pertain exclusively to non-exempt employees, not exempt store managers. *See, e.g.*, Second Amended Complaint ("SAC") ¶¶ 1 (action brought on behalf of "non-exempt retail store employees within the State of California at any time after July 5, 2007"); ¶ 21 (class defined as "[a]ll persons who are and/or were employed as non-exempt retail employees by Michaels Stores, Inc. in one or more of Michaels' California retail stores between July 5, 2007 and the present"); ¶¶ 3, 24-27 (factual allegations pertain to non-exempt

---

33 All Michaels store managers in California are classified as exempt employees.

SCOTT COLE & ASSOCIATES, APC
ATTORNEY'S AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

employees). While the same employee might be a class member in both suits for different time periods, the claims alleged in each suit are not affected by the outcome of the other.

Specially, the release of claims in the present class settlement extends only to those claims "that were actually alleged in the Complaint," or "which could have been brought based on the specific factual allegations contained in the Complaint[.]" Settlement Agreement, ¶ 52. Because the allegations in the *Ragano* complaint pertain only to *non-exempt* employees, the claim the *Rea* plaintiffs have asserted solely on behalf of *exempt* store managers was not and could not have been brought based on the facts alleged in *Ragano*. Therefore, there is no concern that the release in this case would "extinguish Objector's claims which arose in relation to their employment as Store Managers." *See* Objection, p. 1, ln. 16-19.[34] *See Wren*, 2011 WL 1230826, at *13 ("[O]bjections [that] do not relate to the . . . claims that are at issue in th[e] case . . . do not raise any issues calling the fairness or adequacy of the proposed settlement into question.").

Because the *Ragano* release applies only to the *Rea* plaintiffs' claims that arose while they were *non-exempt* employees, the fact that they or other class members later became store managers is irrelevant, as is their contention regarding the potential value of their claims as exempt store managers. In fact, any workweek where a *Ragano* class member worked as an exempt employee were not included in the calculation of that Class Member's pro rata share or the total workweeks calculated for the Class for purposes of this settlement.[35]

The *Rea* plaintiffs have not made any argument that the *Ragano* settlement is unfair or should not be approved with respect to their claims arising out of work as *non-exempt* employees. Therefore, the *Rea* plaintiffs' objection to the settlement should be overruled.

In order to avoid any confusion, the parties in *Ragano* propose adding language to the Final Approval Order, subject to this Court's approval, clarifying that "The release does not apply to claims arising out of or related to any class member's employment as an exempt store

---

[34] Because the claims in the *Rea* Action are not impacted by this settlement, there was no reason or obligation to inform the Court of the *Rea* Action, as the *Rea* plaintiffs contend should have been done.

[35] Exhibit "H" KCC Decl. ¶ 6(c) and (d), and 24.

SCOTT COLE & ASSOCIATES, APC
ATTORNEY'S AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

manager, and such claims are not released or affected by the settlement or release in this case." With this language added, the *Rea* plaintiffs have no basis for objecting to the settlement.

## V. PLAINTIFF'S COUNSEL'S REQUESTED AWARD OF ATTORNEYS' FEES IS FAIR AND REASONABLE

Although the Settlement Agreement provides for an award of attorneys fees up to 33 1/3%, Plaintiffs request an award of 25% of the common fund, which comports with awards typically made in federal jurisdictions. Courts in the Ninth Circuit have articulated several factors which may be relevant to the valuation of the reasonableness of a fee request. These include (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *McPhail v. First Command Fin. Planning, Inc.*, 2009 U.S. Dist. LEXIS 26544 (S.D. Cal. Mar. 30, 2009) (quoting *In re Omnivision Techs.*, 559 F.Supp. 2d 1036, 1046, (N.D. Cal. 2007). Public policy promotes approval of reasonable fee requests since "[t]he function of an award of attorneys' fees is to encourage the bringing of meritorious ... claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel." *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986) (internal quotation marks and citations omitted).

Courts recognize two methods for calculating attorneys' fee awards in connection with class action settlements. The more prevalent "common fund" method calculates attorneys' fees based on a percentage of the benefit to the class.[36] The "lodestar-plus-multiplier" method uses class counsel's "lodestar"– determined by multiplying the hours counsel expended by their hourly rates – enhanced by a multiplier. It is well settled in the Ninth Circuit that "[i]n a common fund case, the district court has discretion to apply either the lodestar method or the percentage-of-the-fund method in calculating a fee award." *See In re Heritage Bond Litig.*, 2005 U.S. Dist.

---

[36] "Under the 'common fund' doctrine, 'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole.'" *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003)(citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). "Thus, the common fund doctrine ensures that each member of the winning party contributes proportionately to the payment of attorneys' fees." *Staton*, 327 F.3d at 967.

LEXIS 13555, *59 (C.D. Cal. June 10, 2005) (citing *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002)).

As explained below, Plaintiffs' request for 25% of the common fund ($500,000, which represents a multiplier to SCA's lodestar of approximately 1.7)[37] meets the reasonableness factors for an attorney fee award.

**A. THE RESULTS ACHIEVED**

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision*, 559 F.Supp. 2d at 1046. Here, 21.4% of Class Members filed timely, valid claims, claiming 37.9% of the Settlement Amount.[38] After re-calculating based on the Floor, the average value of each claim is $141.04, with one Class Member recovering $423.48.[39] Having done everything reasonably possible to ensure that the Class Members not only received the notice but also stepped forward to claim their share of the Settlement – and in light of the positive response from the class members, SCA believes that the amount requested for its fees is fair.

**B. THE RISK OF LITIGATION**

This is not a case where recovery of a substantial settlement and attorney's fees, let alone prior to class certification, was a foregone conclusion. As noted in detail above, Class Counsel evaluated the risks inherent in this litigation such as the potential denial of class certification and Defendant's possible success in asserting a *de minimis* defense. The risk that further litigation might result in the Plaintiffs and Class not recovering anything at all, particularly in a case involving unsettled legal issues such as this one, is a *significant* factor in the award of fees. *In re Omnivision*, 559 F.Supp.2d at 1047. Had this case proceeded to trial, liability and damages would have been hotly contested and possibly appealed.

---

37 Salassi Decl. ¶ 24; Exhibit "I," Lodestar.

38 Exhibit "H," KCC DCL ¶ 31.

39 *Id.*

SCOTT COLE & ASSOCIATES, APC
ATTORNEY'S AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

### C. THE SKILL REQUIRED AND THE QUALITY OF WORK

Class Counsel has demonstrated the requisite skill and competency to justify the fee award sought in the instant matter. SCA has prosecuted scores of wage and hour class actions and is devoted almost exclusively to the prosecution of wage and hour class action matters such as this.[40] Class Counsel developed a robust factual record and put significant resources into analyzing the data and convincing Defendant of its exposure in this case. SCA's collective skills and abilities were essential to reaching the settlement.

### D. THE CONTINGENT NATURE OF THE FEE AND THE FINANCIAL BURDEN BORNE BY PLAINTIFF

The contingent nature of SCA's compensation militates in favor of Plaintiffs' attorneys'fee request. District Courts within the Ninth Circuit recognize that "[t]he rationale behind awarding a percentage of the fund to counsel in common fund cases is the same that justifies permitting contingency fee arrangements in general." *In re Quantum Health Resources, Inc. Sec. Litig.*, 962 F. Supp. 1254 at 1257 (C.D. Cal. 1997). "The underlying premise is the existence of risk -- the contingent risk of non-payment." *Id*. at 1257. "Because payment is contingent upon receiving a favorable result for the class, an attorney should be compensated both for services rendered and for the risk of loss or nonpayment assumed by accepting and prosecuting the case." *Id.* (citing 1 Alba Conte, *Attorney Fee Awards* (3d ed. 2004) § 1.09).

From the outset, the prosecution of this case has involved significant financial risks for SCA. SCA undertook this matter solely on a contingent basis, with no guarantee of recovery of fees or even reimbursement of costs, no matter how long the litigation lasted.[41] While SCA believes that the claims in this case are meritorious, it recognizes the factual and legal challenges involved, making SCA's success all the more contingent.

In addition, SCA's commitment to this litigation should not be assessed in a vacuum. The time SCA spent on litigation and the settlement process prevented it from pursuing other work at the same hourly rates reflected in SCA's lodestar. SCA devoted over 859 hours to litigating this

---

40 Salassi Decl. ¶ 18; Exhibit "J," SCA's Professional Resume.

41 Salassi Decl ¶ 22.

SCOTT COLE & ASSOCIATES, APC
ATTORNEY'S AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

SCOTT COLE & ASSOCIATES, APC
ATTORNEY'S AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

action against Defendant. Those hours represent additional work SCA could have taken, but for its investment in this case.[42]

**E. AWARDS MADE IN SIMILAR CASES**

Plaintiffs' request for 25% of the common fund is an amount routinely found reasonable by other district courts in similar cases within the Ninth Circuit.[43]

**F. THE FEE REQUEST ALSO COMPORTS WITH OTHER COURTS' AWARDS UNDER THE LODESTAR APPROACH**

As an alternative to the common fund theory, Courts may also use a lodestar approach, enhanced by a multiplier. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("[i]n employment...actions, courts often use a lodestar calculation because there is no way to gauge the net value of the settlement of any percentage thereof."). The lodestar calculation begins with the multiplication of the number of hours reasonably expended by a reasonable hourly rate. *See id.*

SCA provided the Court with a grid showing the nature and amount of the work in this case and applicable hourly rates. The total lodestar is $293,983.00.[44] Based on the value of the settlement, the attorney fee award requested here is SCA's lodestar and a small multiplier of 1.7, which is well within the range found reasonable by other courts in California. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002) (affirming district court's conclusion that fee award of 28% of fund and 3.65 times lodestar amount was reasonable). California courts

---

42 Salassi Decl ¶ 24.

43 Counsel requests a 25% fee award, which is the benchmark recognized by the Ninth Circuit in common fund cases. In fact, many awards within this circuit exceed the 25% benchmark. *See Knight v. Red Door Salons, Inc.,* 2009 U.S. Dist. LEXIS 11149,*17 (N.D. Cal. Feb. 2, 2009)). *See also In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 213 F.3d 454 at 460 (9th Cir. 2000) (affirming award of fees equal to one-third of total recovery); *Schiller v. David's Bridal, Inc.*, 2012 U.S. Dist. LEXIS 80776, *52-56 (E.D. Cal. June 11, 2012) (awarding 33.3% of the fund, and citing a list of cases where one-third is a normal percentage in wage and hour class action settlements); *Buccellato v. AT&T Operations, Inc.*, 2011 U.S. Dist. LEXIS 85699, *2 (N.D. Cal. June 30, 2011) (citing numerous cases where a one-third fee was awarded); *Vasquez v. Coast Valley Roofing, Inc*., 266 F.R.D. 482, 491-92 (E.D. Cal. 2010) (awarding 33.3% of the recovery obtained and noting five recent wage and hour class actions where federal district courts approved attorneys' fee awards of 30 to 33%); *In re Heritage Bond Litig.,* 2005 U.S. Dist. LEXIS 13555 (awarding class counsel a fee of 33% of the common fund). In fact, the Honorable Marilyn Hall Patel of the Northern District of California found, after a comprehensive review of fee awards, that the "better practice" would be to set the benchmark percentage at 30%. *In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1377-78 (N.D. Cal. 1989)).

44 *Id.*; Exhibit "I," Lodestar.

SCOTT COLE & ASSOCIATES, APC
ATTORNEY'S AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

also routinely award multipliers on class counsel's lodestar. *See, e.g., Wershba v. Apple Computer, Inc.*, 91 Cal. App.4th 244, 255 (2001) ("Multipliers can range from 2 to 4 or even higher"); *Otero v. Rent-A-Center, Inc.*, (L.A. Super. Ct. 2000) No. BC217038 (awarding 2.43 multiplier in wage and hour case). SCA's fee request of 25% is reasonable under either the common fund and lodestar-plus-multiplier analysis, and warrants approval.

## VI. SCA'S COSTS ARE REASONABLE AND WERE INCURRED TO BENEFIT THE CLASS

In the course of this litigation, SCA incurred substantial costs in the form of legal and factual research, photocopies, fax, travel, postage, mediation, and telephone charges, totaling $15,037.73 and will incur additional expenses through the completion of the distribution process including, but not limited to, the filing fee of this motion, photocopies, fax, postage and telephone charges.[45] Such costs are appropriate for reimbursement in these types of cases. *Leonard v. Baumer (In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Secs. Litig.*), 1989 U.S. Dist. LEXIS 19146 (C.D. Cal. Mar. 9, 1989) (an attorney "whose efforts create a common fund for an identifiable class are entitled to recover their fees and costs from the class so benefited"); 1 Alba Conte, *Attorney Fee Awards* § 2:08 at 50-51 ("The prevailing view is that expenses are awarded in addition to the fee percentage."). The costs incurred by SCA in this litigation have been reasonable and appropriate as they served to benefit the class, and are properly considered when evaluating SCA's cost reimbursement request.

## VII. THE REPRESENTATIVE PLAINTIFFS ARE ENTITLED TO A SERVICE PAYMENT

SCA requests a $5,000.00 Enhancement Award for Representative Plaintiff Anita Ragano and a $2,500.00 Enhancement Award for Representative Plaintiff Teri McDonald. For public policy reasons, "a class representative is entitled to some compensation for the expense he or she incurred on behalf of the class lest individuals find insufficient inducement to lend their names and services to the class action." *West*, 2006 U.S. Dist. LEXIS 76558 at *26 (internal citations

---

45 Salassi Decl. ¶ 25; Exhibit "K," Cost Journal.

SCOTT COLE & ASSOCIATES, APC
ATTORNEY'S AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

omitted). Compensation of class representatives "must be reasonable in light of applicable circumstances, and not 'unfair' to other Class Members." *See id.* at 27). Here, Plaintiffs' requested Service Payments are reasonable given the work they performed on behalf of the class, the risks they face for their participation in the litigation[46] and the minimal effect their request will have on the amount of each Class Members' recovery.

Anita Ragano and Teri McDonald contributed significantly to the resolution of this case. Among other efforts, both plaintiffs produced documents, assisted Class Counsel in preparing discovery responses and provided background information about Michaels' policies and procedures and the day-to-day mechanics of working in a Michaels' store. Both plaintiffs made themselves available to SCA throughout the litigation and settlement process and were willing to risk having their participation be an impediment to future employment.[47] In addition, Anita Ragano took time off from her current job to sit for an all-day deposition.[48] *See, e.g.*, *Glass*, 2007 U.S. Dist. LEXIS 8476 at *41 (approving $25,000 service payments to four named plaintiffs who "provided a great deal of informal discovery to Class Counsel,... a great deal of insight into the policies and practices of UBS [and]... additional relevant detail at the final fairness hearing.") (internal citations omitted); *Barcia v. Contain-A-Way, Inc.*, 2009 U.S. Dist. LEXIS 17118, *14 (S.D. Cal. Mar. 6, 2009) (noting that "[t]he payment of service awards to successful class representatives is appropriate and the amounts of $25,000 are well within the currently accepted ranged. [sic]"). SCA believes that this case would not have settled on the same terms, or in such a timely manner, without Anita Ragano and Teri McDonald's participation and significant efforts.[49]

The proposed Enhancement Award is not unfair to other Class Members, "given that it will not significantly reduce the amount of settlement funds available to the rest of the class." *See West*, 2006 U.S. Dist. LEXIS 76558 at *27. Furthermore, none of the Class Members have

---

[46] Salassi Decl ¶ 26; Exhibit "L," Declaration of Anita Ragano ¶¶ 6, 7; Exhibit "M," Declaration of Teri McDonald ¶ 6.

[47] Salassi Decl ¶ 26; Exhibit "L," Declaration of Anita Ragano ¶¶ 6, 7; Exhibit "M," Declaration of Teri McDonald ¶ 6.

[48] Declaration of Anita Ragano, "Ragano Decl" Exhibit "L," ¶ 4f.

[49] Salassi Decl ¶ 26.

SCOTT COLE & ASSOCIATES, APC
ATTORNEY'S AT LAW
THE WACHOVIA TOWER
1970 BROADWAY, NINTH FLOOR
OAKLAND, CA 94612
TEL: (510) 891-9800

objected to the amount of additional compensation sought by Plaintiffs after being informed. In recognition of their service in coming forward on behalf of the class, the Court should approve Anita Ragano and Teri McDonald's Service Payments.

## VIII. THE CLAIMS ADMINISTRATOR DESERVES REIMBURESEMENT FOR FULLY IMPLEMENTING THE NOTICE PROGRAM

The Court approved notice program and has now been fully implemented, as explained in the Horton declaration.[50] For the complete notice and administration project, including the future processing of claim forms, the Claims Administrator's fees and costs total $95,100.00,[51] a reasonable amount given the thorough services provided and results obtained.

## IX. CONCLUSION

Based upon the foregoing, the Court should enter an Order granting final approval of the parties' class action settlement, award SCA's application for attorneys' fees, costs, Enhancement Awards to the Representative Plaintiffs, and approve reimbursement of claims administration fees and costs.

Dated: February 15, 2013

**SCOTT COLE & ASSOCIATES, APC**

By: /s/ Hannah R. Salassi
Hannah R. Salassi, Esq.
Attorneys for Representative Plaintiffs
and the Plaintiff Class

---

50 *See generally* Exhibit "H," KCC Decl.
51 *Id*. ¶ 30.